UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2018 JUL -5 A 11: 27

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

STEPHANY WASHINGTON,

   Plaintiff,

-v.-

DISH NETWORK, LLC,

   Defendant.

_____/

CASE NO.:

3:18-cv-636-CSC

Demand for Jury Trial

## COMPLAINT

COMES NOW, Plaintiff, Stephany Washington, by and through the undersigned counsel, and sues Defendant, DISH NETWORK, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like DISH NETWORK, LLC ("Dish") from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner

1

at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robo-calls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robo-calls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Russell County, Alabama. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

### FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Alabama, residing in Phenix City, Russell County, Alabama.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation which was formed in Colorado with its principal place of business located at 9601 S. Meridian Boulevard, Englewood, Colorado 80112, and which conducts business in the State of Alabama through its registered agent, Corporation Service Company, Inc., located at 641 South Lawrence Street, Montgomery, Alabama 36104.

11. Defendant called Plaintiff approximately three hundred (300) times in an attempt to collect an alleged debt related to cable services and hardware.

12. Defendant intentionally, knowing and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, beginning in or around October of 2015, with such frequency as can reasonably be expected to harass and in effort to collect upon alleged debt.

13. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that she knew it was an auto-dialer because of the vast number of calls she received and because she heard a pause when she answered her phone before an agent/representative of Defendant would come on the line. Additionally, Plaintiff would often be met with a pre-recorded message and/or artificial voice from Defendant.

14. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (706) ***-9931, and was the called party and recipient of Defendant's calls.

15. Defendant placed an exorbitant amount of automated calls to Plaintiff's cellular telephone (706) ***-9931, in an attempt to reach an individual.

16. Plaintiff does not currently know, nor has ever known, the individual.

17. Plaintiff does not currently have any account or business dealings with Defendant.

18. On several occasions since the inception of her account, Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

19. Upon receipt of the calls Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following number: (866) 668-8047, and when

that number is called, the caller is met with an automated message that states "Thank you for choosing Dish."

20. While Plaintiff had an account with Defendant, Defendant would often call Plaintiff's cellular telephone number and ask for a male individual unknown to the Plaintiff.

21. In or about March 2016, Plaintiff answered a call from Defendant, was met with an extended pause, held on the line to be connected to a live agent/representative and informed the agent/representative to immediately cease all calls to her cellular telephone and that she is not the individual they were calling about. Plaintiff informed Defendant's agent/representative that the calls to her cellular telephone were harassing and demanded Defendant immediately cease all calls to her cellular telephone.

22. During the aforementioned telephone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an auto-dialer or artificial voice or pre-recorded message.

23. Each call Defendant made to Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of Plaintiff.

24. Each call Defendant made to Plaintiff's aforementioned cellular telephone number was knowing and willful.

25. Despite actual knowledge of their wrongdoing, Defendant continued the campaign of abuse, calling Plaintiff's continually despite Plaintiff informing Defendant that she was not the individual for whom they were calling, and not having her express permission to call her aforementioned cellular telephone number.

26. Again, on or about January 13, 2017, Plaintiff answered a call from Defendant to her aforementioned cellular telephone number. Plaintiff spoke to an agent/representative of Defendant and informed the agent/representative that the calls to her cellular telephone were harassing, that she had previously requested they stop calling her cellular telephone, and demanded that they cease calling her cellular telephone number.

27. Similarly, on or about January 20, 2017, Plaintiff received a call from Defendant, was met with an extended pause, eventually was connected to agent/representative of Defendant, and demanded that Defendant stop calling her cellular telephone number.

28. Plaintiff's numerous conversations with Defendant's agent/representative over the telephone wherein she demanded a cessation of calls were in vain as defendant continued to bombard her with automated calls unabated.

29. From about March of 2016 through the filing of this Complaint, Defendant has placed approximately three hundred (300) actionable calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of one hundred forty (140) calls between March 31, 2017 and September 30, 2017.

30. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

31. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant to remove the number.

32. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

33. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

34. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

35. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however Defendant continues to call these individuals.

36. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant call list.

37. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

7

38. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

39. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

40. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

41. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

42. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the

phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

45. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

46. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

47. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety and aggravation.

## COUNT I
### (Violation of the TCPA)

48. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-seven (47) as if fully set forth herein.

49. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop

50.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against DISH NETWORK, L.L.C. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Shaughn C. Hill

SHAUGHN C. HILL, ESQ.
MORGAN & MORGAN TAMPA P.A.
Florida Bar No.: 105995
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: (813) 223-5505
Facsimile: (813) 223-5402
shill@forthepeople.com
*Attorney for Plaintiff*
